UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 05-CV-2914 (JFB)

———————————

DOMINIC THOMPSON,

Petitioner,

VERSUS

JOHN BURGE,
SUPERINTENDENT, AUBURN CORRECTIONAL FACILITY

Respondent.

———————————

MEMORANDUM AND ORDER
July 6, 2007

———————————

JOSEPH F. BIANCO, District Judge:

Dominic Thompson ("Thompson" or "petitioner") petitions this Court *pro se* for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his state court conviction. On May 2, 2002, petitioner was convicted by a judgment of the Supreme Court of the State of New York, Queens County, following a jury trial, of the following: three counts of Robbery in the Second Degree [N.Y. Penal Law § 160.10[1]); one count of Criminal Possession of a Weapon in the Second Degree [N.Y. Penal Law § 265.03(2)]; three counts of Criminal Possession of a Weapon in the Third Degree [N.Y. Penal Law § 265.02(1)]; three counts of Criminal Possession of Stolen Property in the Fifth Degree [N.Y. Penal Law § 165.400; and one count of Criminal Trespass in the Second Degree [N.Y. Penal Law § 140.15]. Petitioner was sentenced to concurrent terms of incarceration, which resulted in a sentence of 15 years' imprisonment.

Petitioner challenges his conviction on the following grounds: (1) he was denied a fair trial and due process of law because, among other things, the evidence presented at trial was insufficient as a matter of law to convict him; (2) he was deprived of his Sixth Amendment right to the effective assistance of trial counsel; and (3) the prosecutor at trial assumed the role of an unsworn witness and offered testimony, which resulted in petitioner being denied his right to a fair trial. For the reasons set forth below, the petition is denied in its entirety on the merits.

I. BACKGROUND

A. The Facts

The following facts are adduced from the instant petition and underlying record.

On June 10, 2001, between 11:00 a.m. and 11:30 a.m., in front of Sybil's restaurant on Hillside Avenue in Queens County, New York, Amit Sukhram ("Sukhram"), Rohee Ramsamojh ('Ramsamojh"), and Mohamed Ally ("Ally") were waiting for their food order. (Tr. 368-69, 374, 404, 604.)[1] While waiting for the food order, petitioner and an unidentified male asked them for a dollar for change for the subway and Mohamed began to check his wallet for loose change. (*Id.* 374-77, 412, 605.) Petitioner then pulled out a gun and pointed it at Sukhram's stomach. (*Id.* 373-74, 377-79.) Petitioner and his accomplice then walked the three victims backwards into an alley. (*Id.* 413-14, 425-26, 606.) When they reached the back of the alley, petitioner took Sukhram's pager from his waist and told all three men to empty their pockets. (*Id.* 378-80, 383, 414.) While Ramsamojh and Ally removed their belongings – two bracelets, a chain and a sum of money – and placed them on the ground, petitioner told them not to try anything because his accomplice also had a gun. (*Id.* 382, 610-12, 653-54.) Petitioner then grabbed the jewelry and money from the ground, and he and his accomplice ran away. (*Id.* 383-384, 612.)

As petitioner and his accomplice fled the area, Sukhram retrieved his remaining belongings from the ground and ran with the other two victims towards the alley entrance. (*Id.* 384, 612-13.) At that point, the three victims saw Police Officer Kathleen Van Buren ("Officer Van Buren"), pointed at petitioner and his accomplice as they were running away, and advised Officer Van Buren that they had just been robbed by a man with a gun. (*Id.* 384-85, 440-41, 613.) Officer Van Buren then called for backup and, after Sukhram described the two robbers and described the items that had been taken, Sukhram and Ally got into her police car and canvassed the immediate area in an attempt to locate the robbers. (*Id.* 385-88.) Officer Van Buren told Ramsamojh to wait there for another police car because he would not fit in the car. (*Id.* 613.) Shortly thereafter, Police Officers Daniel Feil ("Officer Feil") and Jerry Malone ("Officer Malone") arrived in a second police car and Ramsamojh provided a description of the two men who had robbed him and his friends. (*Id.* 614, 665-66.)

During a canvass of the area, Ramsamojh saw petitioner in an alley next to a Dunkin Donuts shop on Parsons Boulevard, pointed petitioner out to the police, and noticed that petitioner was not wearing the same shirt he had worn during the robbery. (*Id.* 616, 639-41, 668, 673.) As the police drove into the alley, petitioner saw the police car, and fled by jumping over a cinder-block wall covered with barbed wire. (*Id.* 616-17, 673-77, 691.) Officer Feil lost sight of petitioner and radioed his location to Officer Van Buren. (*Id.* 679.)

After arriving at the Dunkin Donuts shop, Officer Van Buren continued to canvass the area with Sukhram and Ally. (*Id.* 391.) A few blocks away from where the robbery occurred, Sukhram and Ally saw petitioner and pointed him out to Officer Van Buren as the man who had robbed them. (*Id.* 391-93,

---

[1] "Tr." refers to the transcript of the trial proceedings in the underlying criminal action.

2

447.) A pursuit ensued, during which petitioner entered an open window of the first floor apartment at 162-05 89th Avenue where Javier Cruz ("Cruz") lived with his wife and young son. (*Id.* 355-58, 391-94, 447-51, 617-18, 681-82, 684-81, 355.). Cruz saw petitioner in his home, noticed he was not wearing a shirt, and told him to leave, but petitioner remained and hid inside a closet. (*Id.* 361-62.)

Within seconds, the police arrived and found petitioner hiding in the closet. (*Id.* 363-65, 451-53, 682-83.) As Officer Feil took petitioner out of the closet, he noticed petitioner's fingers were bleeding; Officer Van Buren noticed that petitioner was no longer wearing the white t-shirt he had been wearing during his flight and that petitioner was very sweaty. (*Id.* 365-66, 453, 683.) Outside the building, Officer Van Buren placed petitioner under arrest and, when she searched him, found Sukhram's pager in petitioner's pocket. (*Id.* 395, 454-55.)

After placing petitioner under arrest, the officers and complainants returned to the alley next to the Dunkin Donuts shop in order to search for evidence. (*Id.* 458.) Inside the alley, the officers found a defaced nine millimeter silver gun with one round in the chamber and eight rounds in the clip, as well as the shirt petitioner had been wearing during the robbery, Ramsamojh's chain, and Ally's bracelet and money. (*Id.* 396-399, 455-61, 479-83, 620-22, 685-87.)

Petitioner contested some of the aforementioned evidence during his testimony at trial. Petitioner testified that Sukhram and Ramsamojh had attempted to buy marijuana from him, and that petitioner walked away with their money and never returned. (*Id.* 741-42, 749.) Petitioner denied that Ally, the non-testifying complainant, had been present at all. (*Id.* 741, 748.) According to petitioner, when he saw the complainants pointing him out from a patrol car, he fled because he feared that the complainants had wrongfully accused him of stealing money from them. (*Id.* 744-48, 751, 753.) Petitioner testified that he had taken off his t-shirt in an attempt to disguise his appearance when he was running from the police. (*Id.* 755.) He acknowledged that the police found him in a closet in Cruz's apartment. (*Id.* 755-56.) Petitioner denied that the "scratches" on his knuckles had come from a barbed wire fence, and stated that he might have gotten them when the police threw him to the floor. (*Id.* 757-58.) Petitioner denied having robbed the complainants with a gun and also denied having been anywhere near the above-referenced Dunkin Donuts shop that day.[2] (*Id.* 745, 758-59.)

B. Procedural History

Petitioner was charged with six counts of Robbery in the First Degree [N.Y. Penal Law § 160.15(2) and (4), three counts each] three counts of Robbery in the Second Degree [N.Y. Penal Law § 160.10(1)], Criminal Possession of a Weapon in the Second Degree [N.Y. Penal Law § 265.03(2)], three counts of Criminal Possession of a Weapon in the Third Degree [N.Y. Penal Law § 265.02(1), (3), (4)], two counts of Criminal Possession of Stolen Property in the Fourth Degree [N.Y. Penal Law § 165.45], Criminal Possession of Stolen Property in the Fifth Degree [N.Y. Penal Law § 165.40] and Criminal Trespass in

---

[2] On cross-examination, although denying he had a gun, petitioner admitted that he was taken to the Dunkin Donuts location after his arrest and saw Officer Van Buren return from the alley with a gun. (*Id.* 759-63.)

3

the Second Degree [N.Y. Penal Law § 140.15]. (Queens County Indictment Number 1830/2001.) Petitioner was convicted on all counts following a jury trial before Justice Joseph Rosenzweig, Supreme Court, Queens County.[3] Petitioner was subsequently sentenced, as a second felony offender, as follows: a determinate prison term of fifteen years on each of the first and second degree robbery convictions and on the second degree weapon possession conviction, indeterminate terms of imprisonment of three to six years on the two non-violent felonies and the third-degree weapons-possession convictions, and one year on each of the fifth-degree criminal possession of stolen property and second degree-criminal trespass convictions. (Tr. of May 2, 2002 Sentencing Proceedings, at 11.) All of the sentences on the various counts were imposed to run concurrently. (*Id.*)

Petitioner appealed his conviction to the Appellate Division, Second Department, raising the following issues on appeal: (1) "[petitioner] was denied a fair trial when the prosecutor made herself an unsworn witness by arguing that the police had taken inculpatory statements from [petitioner] when the People had presented no evidence to this effect"; (2) "[petitioner]'s conviction was against the weight of the evidence where his defense was that the complainants, who had criminal histories of drug use and theft, had falsely accused him of robbery in retaliation for his having cheated them in a marijuana sale, and where the third complainant had left the country on the eve of the trial"; and (3) "[petitioner]'s sentence totaling 15 years of imprisonment is excessive where he was only 19 years old, had neither injured nor attempted to injure any of the robbery complainants, and where a sustained prison term merely perpetuates the pattern of his childhood of receiving only punishment without nurturing or guidance." (Brief for Defendant-Appellant submitted by Petitioner to the Appellate Division (hereinafter, "Pet.'s Br.") at i-ii.) In connection with his argument regarding the weight of the evidence, petitioner also contended on appeal in state court that (1) the evidence at trial was insufficient to support a conviction of Second Degree robbery [N.Y. Penal Law § 160.10(1)] because of the State's failure to prove petitioner was aided by another person actually present, and (2) that there was insufficient evidence to convict petitioner on any of the robbery counts pertaining to Ally, the complainant who was absent from the trial. (*Id.* at 32-33.)

On January 12, 2004, the Second Department unanimously affirmed petitioner's conviction. *People v. Thompson*, 769 N.Y.S.2d 754 (N.Y. App. Div. 2004). On March 18, 2004, the New York State Court of Appeals denied Thompson's application for leave to appeal. *People v. Thompson*, 810 N.E.2d 925 (N.Y. 2004).

By *pro se* application, filed June 7, 2005, Thompson petitioned this Court for a writ of habeas corpus.

II. DISCUSSION

Petitioner raises three claims in his habeas petition. First, petitioner argues that he was denied a fair trial and due process for the following reasons: (i) the State did not prove that he used force during the robbery; (ii) he

---

[3]At the close of evidence, the trial court reduced the two counts of fourth-degree criminal possession of stolen property to fifth-degree criminal possession of stolen property, finding that the prosecution had failed to present evidence as to the value of the property. (Tr. at 795.)

4

was denied his right to confront each of his accusers because one of the robbery victims did not testify at trial; (iii) the evidence at trial was insufficient as a matter of law to support his conviction and was against the weight of the evidence, primarily because the testimony of the police officers and the victims was contradicted by prior statements and police reports and because the State failed to conduct a fingerprint analysis on the gun that was used in the robbery. Second, petitioner contends that his trial counsel was ineffective because he failed to obtain a court order to compel a fingerprint analysis on the gun and also failed to introduce to the jury the prior inconsistent statements of witnesses. Third, petitioner claims that he was denied a fair trial because the prosecutor made herself an unsworn witness by commenting in her summation on an oral statement made by petitioner to the police that had not been introduced into evidence.

As set forth below, none of petitioner's claims warrant habeas relief. As a threshold matter, some of his claims – namely, that the evidence was legally insufficient because the State failed to prove that he used physical force, that he was denied his right to confront witnesses, and that he was denied effective assistance of counsel – are unexhausted and procedurally barred because he no longer has a state forum in which to raise the claims, and he has not shown cause for his procedural default or prejudice, nor has he shown that a fundamental miscarriage of justice will result from non-review of these claims. In any event, as discussed below, the Court has analyzed the substance of these unexhausted claims, as well as the other claims, and finds them all to be without merit.

A. Standard of Review

To determine whether or not a petitioner is entitled to a grant of a writ of habeas corpus, a federal court must apply the standards of review provided in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No 104-132, 110 Stat. 1214, which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

5

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006). A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Williams*, 529 U.S. at 413; *see also Earley*, 451 F.3d at 74.

AEDPA establishes a deferential standard of review – "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit has noted that although "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)); *accord Earley*, 451 F.3d at 74.

B. Exhaustion of Claims

A state prisoner seeking federal habeas review of his conviction must first ordinarily exhaust available state remedies. 28 U.S.C. § 2254(b)(1)(A); *see Daye v. Att'y General of the State of N.Y.*, 696 F.2d 186, 190-91 (2d Cir. 1982); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971); *Nelson v. George*, 399 U.S. 224, 229 (1970). In order to exhaust such remedies, a habeas petitioner must have previously given state courts a fair opportunity to pass upon his federal claims. *Daye*, 696 F.2d at 190; *see also Picard*, 404 U.S. at 275. That is, a petitioner must have presented his claims, setting forth the same factual and legal premises presented in his federal petition, to the highest state court from which a decision can be had. *Daye*, 696 F.2d at 191 (citing *Developments in the Law – Federal Habeas Corpus*, 83 Harv. L. Rev. 1038, 1096 (1970)). "[S]tate review ends when the state courts have finally resolved an application for state postconviction relief." *Roper v. Weaver*, 127 S. Ct. 2022, 2023-24 (2007) (quoting *Lawrence v. Florida*, 127 S. Ct. 1079, 1083 (2007)).

"A habeas petitioner's federal constitutional claims may be considered exhausted when the claims were 'fairly' – though not explicitly – presented to the state courts." *Holland v. Scully*, 797 F.2d 57, 64 (2d Cir. 1986) (citing *Daye*, 696 F.2d at 191); *see also Picard*, 404 U.S. at 275; *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000); *Bennett v. Artuz*, 285 F. Supp. 2d 305, 311 (E.D.N.Y. 2003). The constitutional claim made in federal court "need not be identical with the one advanced to the state court, but it must be its 'substantial equivalent.'" *Fielding v. LeFevre*, 548 F.2d 1102, 1107 (2d Cir. 1977) (quoting *Picard*, 404 U.S. at 275, 277).

A habeas petition which contains both exhausted and unexhausted claims is known as a "mixed petition." When a petitioner submits a mixed petition to the court, the court may dismiss petitioner's unexhausted claims, stay consideration of the exhausted claims, and allow petitioner an opportunity to amend the petition after he returns to state court to satisfy the exhaustion requirement. *See Zarvela v. Artuz*, 254 F.3d 374, 379-82 (2d Cir. 2001); *see also Rhines v. Walker*, 544 U.S. 269, 275-88 (2005). However, the stay-and-abeyance procedure is only appropriate when the district court determines that there was good cause for the petitioner's failure to exhaust his claims first in state court. *Rhines*, 544 U.S. at 275-88. Even when such good cause exists for failure to present a state claim, a district court should not stay a petition containing unexhausted claims that are plainly meritless. *See id.*; *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Bryant v. Grenier*, No. 02 Civ. 6121 (RMB) (RLE), 2005 U.S. Dist. LEXIS 28105, at *4-5 (S.D.N.Y. Nov. 15, 2005). The respondent correctly notes that, in lieu of the "stay and abeyance" procedure, the court may dispose of unexhausted claims on the merits, or may deny a mixed petition in its entirety. *See* 28 U.S.C. § 2254(b)(2).

The law is unsettled in the Second Circuit regarding the proper response to habeas petitions containing unexhausted claims. A majority of district courts in the Second Circuit dismiss unexhausted claims that are "patently frivolous." *McFadden v. Senkowski*, 421 F. Supp. 2d 619, 621 (W.D.N.Y. 2006); *see, e.g., Naranjo v. Filion*, No. 02 Civ. 5449 (WHP) (AJP), 2003 WL 1900867, at *8 (S.D.N.Y. Apr. 16, 2003) (citing *Hammock v. Walker*, 224 F. Supp. 2d 544, 549 (W.D.N.Y. 2002); *Cruz v. Artuz*, No. 97-CV-2508 (FB), 2002 U.S. Dist. LEXIS 11150, at *25-26 (E.D.N.Y. June 24, 2002)).[4] Other federal district courts in the Second Circuit will dismiss an unexhausted claim if it does not raise a federal question. *See, e.g., Padilla v. Keane*, No. 00 Civ. 1235 (VM) (AJP), 2000 WL 1774717, at *3 (S.D.N.Y. Dec. 4, 2000); *Orraca v. Walker*, 53 F. Supp. 2d 605, 611 (S.D.N.Y. 1999).

There are also instances in which a state court forum no longer exists in which an unexhausted claim can be adjudicated. This is most often due to statute of limitations requirements or some other state procedural rule. Often, state appellate courts will deny a claim based upon a procedural default, which "constitutes an independent and adequate ground for the state court decision." *Bulla v. Lempke*, No. 06 Civ. 1156 (JSR) (GWG), 2006 U.S. Dist. LEXIS 59930, at *24 (S.D.N.Y. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722 (2001)). If a claim raised in a habeas petition falls within this category, such a claim is ineligible for review in the context of a federal habeas petition.

---

[4] Some courts have similarly articulated a "nonmeritorious" standard for disposing of unexhausted claims. *See Basnight v. Keane*, No. 99-CV-5907 (FB), 2001 U.S. Dist. LEXIS 11555, at *15 (E.D.N.Y. July 31, 2001) (citing *Duncan v. Walker*, 531 U.S. 991 (Stevens, J., concurring in part and concurring in the judgment) ("AEDPA gives a district court the alternative of simply denying a petition containing unexhausted but nonmeritorious claims")); *see also Tatta v. Miller*, No. 05-CV-1205 (FB), 2005 U.S. Dist. LEXIS 25127 at *7 (E.D.N.Y. Oct. 27, 2005). This standard is sufficiently similar to the "patently frivolous" standard to categorize the two as a single test.

7

The law on this subject as interpreted and applied by the Second Circuit is set forth in its recent decision in *Jimenez v. Walker*, where the court observed, in relevant part:

> To prevent a prisoner from exhausting his claims by simply letting the time run on state remedies, the Supreme Court crafted a separate waiver rule – or as it is now commonly known – the procedural default doctrine. Under the procedural-default doctrine, when a prisoner has exhausted his state remedies but has not given the state courts a fair opportunity to pass on his federal claims, the prisoner has procedurally defaulted his claims and is ineligible for federal habeas relief absent a showing of cause and prejudice or a fundamental miscarriage of justice.

458 F.3d 130, 140 (2d Cir. 2006) (internal quotations and citations omitted).

As discussed more fully *infra*, petitioner has failed to exhaust the insufficiency of the evidence claim relating to the People's alleged failure at trial to prove that petitioner used force in stealing the complainants' property, the claim regarding petitioner's inability to confront one of the complainants at trial, and the claim that his trial counsel was ineffective. Further, these claims are now procedurally defaulted, and petitioner has articulated no reason for this default, nor made any showing that failure to review these claims would result in prejudice or in a fundamental miscarriage of justice. Nevertheless, as discussed *infra,* the Court has analyzed the substance of these claims and finds them to be without merit.

C. Petitioner's Claims

1. Insufficiency of the Evidence Claims

Petitioner argues that he was deprived of a fair trial and due process because there was insufficient evidence to prove his guilt beyond a reasonable doubt. Petitioner advances a number of grounds for that claim, including the following: (1) the State did not establish at trial that the defendant used force in stealing property from the complainants; (2) the evidence was insufficient to support the second-degree robbery convictions because there was no evidence that petitioner was aided by another; (3) he was denied his right to confront each of his accusers because one of the robbery victims did not testify at trial; and (4) the evidence at trial was insufficient as a matter of law to support his conviction and was against the weight of the evidence, primarily because the testimony of the police officers and the victims was contradicted by other evidence and because the State failed to conduct a fingerprint analysis on the gun that was used in the robbery.

The law governing habeas relief from a state conviction based on the insufficiency of evidence is well established. That is, a petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. *Einaugler v. Sup. Ct. of the State of New York*, 109 F.3d 836, 840 (2d Cir. 1997). As such, a "state criminal conviction will be upheld if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vassell v. McGinnis*, No. 04 Civ. 0856 (JG), 2004 WL 3088666 at *5 (E.D.N.Y. Dec. 22, 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also*

*Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("We review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial."); *Policano v. Herbert*, 430 F.3d 82, 86 (2d Cir. 2005) ("'in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254[,] . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'") (quoting *Jackson*, 443 U.S. at 324). Even when "faced with a record of historical facts that supports conflicting inferences, [this Court] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994).

a. Evidence Regarding the Use of Force

As a threshold matter, as noted *supra*, this Court is procedurally barred from reviewing the insufficiency claim regarding the purported lack of evidence of physical force in connection with the robbery. "The Second Circuit has held that 'federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.'" *Mejias v. Allard*, No. 03 Civ. 5195 (NGG), 2006 WL 119033 at *9 (E.D.N.Y. Jan. 13, 2006) (quoting *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 2000)). Here, the Appellate Division found that the insufficiency of the evidence claim was unpreserved for appellate review and, in the alternative, was without merit. *See Thompson*, 769 N.Y.S.2d 754, *lv. denied*, 810 N.E.2d 925 (N.Y. 2004).

Therefore, the Court concludes that this claim is not preserved for federal review because petitioner did not advance any arguments in his state appeal regarding evidence of the use of force, or lack thereof, and, thus, the Appellate Division never had the opportunity to review this claim. Further, petitioner articulates no reason, nor is there any reason apparent to this Court, why petitioner failed to raise this claim in the proceedings below. Thus, petitioner is procedurally barred from obtaining federal habeas review on this issue. In any event, in an abundance of caution, the Court will analyze the merits of this claim along with petitioner's other exhausted grounds supporting his insufficiency of the evidence claim.

Here, petitioner claims that there was insufficient evidence that he used force, as defined by N.Y. Penal Law §§ 160.10, 160.15, so as to convict him of Robbery in the First and Second Degree. The Court disagrees. N.Y. Penal Law § 160.00 defines "Robbery" as the following:

> Robbery is forcible stealing. A person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of:
>
> 1. Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or

9

2. Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny.

Here, the State presented sufficient evidence at trial, through the testimony of the complainants that petitioner "threaten[ed] the immediate use of physical force" upon the complainants in order to compel them to "deliver up" their property. N.Y. Penal Law § 160.00. Specifically, such evidence was presented by one complainant's testimony that, during the course of the robbery, petitioner pulled out a gun and pointed it at Sukhram's stomach. (Tr. 373-74, 377-79.); *see, e.g., People v. Sweeper*, 723 N.Y.S.2d 142, 142 (N.Y. App. Div. 2001) (finding conviction for Second-Degree Robbery supported by "legally sufficient evidence" where it was "clearly established," among other things, that "defendant suggested to the victim that he was carrying a gun, and [the] defendant's accomplice displayed a gun"); *People v. Forbes*, 593 N.Y.S.2d 912, 913 (N.Y. App. Div. 1993) (finding sufficient evidence of "use or threat of force" to support a First-Degree Robbery conviction where the defendant "stuck [a] gun in the victim's ribs"); *People v. Madeo*, 477 N.Y.S.2d 923, 925 (N.Y. App. Div. 1984) ("[The] defendant's statement that he had a gun and his partial display thereof are sufficient under the circumstances to constitute a threat of immediate use of a dangerous instrument."). Accordingly, the Court finds that, viewing the evidence presented at trial in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the first-degree robbery offenses beyond a reasonable doubt. *See, e.g., Vassell v. McGinnis*, 2004 WL 3088666, at *

b. Evidence that Petitioner Was Aided by Another During the Commission of the Robbery

As to the second-degree robbery convictions, the State presented sufficient evidence at trial, through the testimony of the complainants, demonstrating that petitioner was "aided by another actually present" as set forth in subsection (1) of N.Y. Penal Law § 160.10. *See, e.g., People v. Hedgeman,* 517 N.E.2d 858, 862 (N.Y. 1987); *People v. Clarke*, 697 N.Y.S.2d 247, 247 (N.Y. App. Div. 1997) (finding, *inter alia*, sufficient evidence under subsection (1) where "[t]here was ample evidence that defendant participated in the robbery, while acting with another"); *People v. Charles*, 562 N.Y.S.2d 661, 662 (N.Y. App. Div. 1990) (affirming conviction under subsection (1) where the trial testimony established that the defendant and an "unidentified person" robbed the complainants). As the New York Court of Appeals has observed:

> The sole purpose of the phrase "actually present" in Penal Law § 160.10 (1) is to describe a circumstance which, like "[causing] physical injury" to another (subd [2] [a]) or "[displaying] what appears to be a . . . firearm" (subd [2] [b]), has the effect of raising the seriousness of the crime committed by a robber from a class D to class C felony.

> When the three aggravating factors in Penal Law § 160.10 are read together, they reflect a concern for the added element of physical harm, danger, and perceived threat of additional violence to the victims of the robbery. That concern is clearly present in situations involving physical injury or the

apparent willingness to use a firearm. Likewise, it is present where the robber is joined by another in his use or threat of force or in his seizing or retaining another's property. No such concern exists, however, where the robber has but one accomplice, unknown and unseen to the victim at the time of the robbery

*People v. Hedgeman*, 517 N.E.2d 858, 863 (N.Y. 1987). Here, one complainant testified that, in addition to petitioner pointing a gun at Sukhram during the course of the robbery (Tr. 373-74, 377-79), petitioner was accompanied by another individual throughout the course of the robbery, and that petitioner told the complainants that the other individual was also in possession of a gun (*Id.* 382, 610-12, 653-54). Thus, it is clear that the trial testimony established that, pursuant to N.Y. Penal Law § 160.10, petitioner was "joined by another in his . . . threat of force" against the complainants. *Hedgeman*, 517 N.E.2d at 863. Accordingly, the Court finds that, viewing the evidence presented at trial in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the second-degree robbery offenses beyond a reasonable doubt.[5]

*See, e.g., Vassell v. McGinnis*, 2004 WL 3088666, at *5.

c. Alleged Insufficiency of the Evidence as to those Crimes Against Mohammed Ally

Petitioner also argues that all of the counts pertaining to complainant Ally should be dismissed because Ally did not testify at trial and, according to petitioner, left the country on the eve of trial without explanation. As a threshold matter, as noted *supra*, the Court finds that petitioner's insufficiency of the evidence claim relating to the crimes against Ally is procedurally barred because it was not raised by petitioner on appeal in state court, and that there is no longer a state court forum available to petitioner in which to raise this claim. *See Jimenez*, 458 F.3d at 149. Further, petitioner has not shown cause for his default or demonstrated that the failure to consider this claim will result in a fundamental miscarriage of justice. In any event, as discussed below, the Court finds petitioner's claim to be without merit.

The Court finds that, notwithstanding Ally's absence from trial, there was sufficient evidence produced at trial to support the version of events put forth by the prosecution – namely, that petitioner forcibly stole

---

[5] The Court also notes that, even assuming *arguendo* that there was insufficient evidence demonstrating that petitioner was actually aided by another, there was sufficient evidence for the second-degree robbery convictions, pursuant to § 160.10(2)(b), based on the complainants' testimony establishing that petitioner "[d]isplay[ed] what appear[ed] to be a . . . firearm" in the "course of the commission of the crime." N.Y. Penal Law § 160.10(2)(b); *see, e.g., People v. Crichlow*, 697 N.Y.S.2d 75, 76 (N.Y. App. Div. 1999) (affirming conviction under § 160.10(2)(b) where "[t]he complainant's testimony established that the defendant displayed what appeared to be a gun"); *People v. Guerriero*, 633 N.Y.S.2d 597, 598 (N.Y. App. Div. 1995) (affirming conviction under § 160.10(2)(b) where the "defendant's gesture" – pointing to his own back while his companion declared he had a gun – "'conspicuously and consciously conveyed the impression" that the defendant was reaching for a gun) (quoting *People v. Lopez*, 73 N.Y.2d 214, 222 (N.Y. App. Div. 1989)). Specifically, the complainants testified that, during the course of the robbery, petitioner pointed a gun at Sukhram. (Tr. 373-74, 377-79.)

property from three people, including Ally. The testimony of the other complainants who testified that they were robbed along with Ally, as well as the testimony of the police officers who investigated the crime, served as sufficient evidence to establish that there were three victims, including Ally. Thus, the evidence presented at trial supports convictions on all three counts, even without Ally's testimony.[6]

### d. Other Insufficiency of the Evidence Grounds

In support of his insufficiency of the evidence claims, petitioner also cites other grounds such as inconsistencies in police paperwork, lack of credibility of the prosecution's witnesses, and the failure of the prosecution to request a fingerprint analysis of the weapon alleged to have been used by petitioner during the robbery.[7]

First, petitioner's attacks on the credibility of the witnesses does not warrant habeas relief. As noted earlier, it is well established that a habeas court may neither "disturb the jury's findings with respect to the witnesses' credibility," *United States v. Roman*, 870 F.2d 65, 71 (2d Cir. 1989), nor "make credibility judgments about the testimony presented at petitioner's trial or . . . weigh conflicting testimony." *Fagon v. Bara*, 717 F. Supp. 976, 979 (citing *United States v. Zabare*, 871 F.2d 282, 286 (2d Cir.1989)). A federal habeas court must "resolve all issues of credibility[] in favor of the jury's verdict." *United States v. Reyes*, 157 F.3d 949, 955 (2d Cir. 1998); *see also Copeland v. Walker*, 258 F. Supp. 2d 105, 120 (E.D.N.Y. 2003) ("[C]redibility determinations are exclusively the domain of the trier of fact."). Therefore, petitioner's challenge to the witnesses' credibility cannot support a claim of legal insufficiency on habeas review.

Similarly, petitioner's claims regarding other purported flaws in the proof presented at trial, including errors in police reports and the failure to send the gun for fingerprint analysis, are also without merit. At trial, the police officers were questioned regarding errors in the police reports and the failure to request fingerprint analysis of the gun and cartridges. Thus, the jury had an adequate opportunity to assess whether these issues in any way undermined the officers' credibility or the probative nature of the physical evidence offered against plaintiff at trial.[8] "A habeas

---

[6] Petitioner incorrectly refers to this claim for habeas relief as a confrontation clause issue. Petitioner's counsel was fully able to confront and cross-examine the two victims who testified at trial. Petitioner has pointed to no statements of the unavailable third victim, Ally, that were erroneously admitted. Thus, his confrontation rights as to Ally were not implicated.

[7] Insofar as petitioner may have intended to raise a claim that his conviction was against the weight of the evidence, weight of the evidence claims are not cognizable by this Court in the context of federal habeas corpus review. *See, e.g., Arthur v. Beaver*, No. 03 Civ. 4555 (JG), 2004 U.S. Dist. LEXIS 20185, at *7 n.1 (E.D.N.Y. Oct. 8, 2004). However, the Court construes petitioner's claim to be an insufficiency of the evidence claim and finds, for the reasons set forth herein, that there is no merit to his various contentions.

[8] Officer Van Buren testified that the voucher paperwork contained errors. Specifically, the vouchers for the money and two bracelets erroneously indicated that they had been found in a cardboard box, when they had in fact been recovered inside petitioner's shirt in the parking lot. Moreover, the voucher for the pager incorrectly stated that the victim's pager was

12

court will not grant relief on a sufficiency claim unless the record is 'so totally devoid of evidentiary support that a due process issue is raised.'" *Sanford v. Burge*, 334 F. Supp. 2d 289, 303 (E.D.N.Y. 2004) (quoting *Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir. 1994)). Petitioner's conviction was supported by the eyewitness testimony of two victims who identified petitioner as one of the robbers, and by physical evidence consisting of the following: (1) a victim's pager that was taken during the robbery and was found on petitioner's person when he was arrested hiding in a closet; and (2) other property wrapped in a t-shirt and a gun that were found in an alley where petitioner was seen fleeing from police. Thus, the evidence presented at trial was clearly sufficient for a rational jury to find petitioner guilty of the crimes, even if there were errors in the police report and no fingerprint analysis was done. Accordingly, the Court finds that petitioner's claim of insufficient evidence in state court do not provide a basis for habeas relief.

2. Ineffective Assistance of Counsel Claim

Petitioner claims that he was deprived of his Sixth Amendment right to the effective assistance of counsel at trial. Specifically, petitioner argues that his attorney erred by failing to request a fingerprint analysis of the weapon used in the commission of the robbery, and by failing to aggressively question the State's witnesses. First and foremost, as is the case with a portion of petitioner's insufficiency of the evidence claim, the Court finds that petitioner's ineffective assistance claim is procedurally barred because it was not raised by petitioner on appeal in state court, and that there is no longer a state court forum available to petitioner in which to raise this claim. *See Jimenez*, 458 F.3d at 149. Further, petitioner has not shown cause for his default or demonstrated that the failure to consider this claim will result in a fundamental miscarriage of justice. In any event, the Court finds petitioner's claim that his counsel was constitutionally ineffective to be without merit.

Under the standard promulgated by *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984), a petitioner is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel, that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

The first prong requires a showing that counsel's performance was deficient. However, constitutionally effective counsel

---

found behind the Dunkin Donuts, when in fact it was found in petitioner's front pocket. The officer testified that at least three other officers had been involved in preparing the voucher paperwork. (Tr. 479-81.) With respect to the fingerprint analysis, Officer Van Buren testified that she used gloves when she handled the gun, but did not specifically request that the gun and cartridges be analyzed for fingerprints. (*Id.* 490-93.) Detective John Burke testified (1) that he had tested the gun and ammunition and that they were operable; (2) that out of the six hundred and eighty guns that he had tested, only five to ten were accompanied by a request for fingerprint analysis; and (3) out of all the guns that are tested for fingerprints, a usable print is recovered from only four percent, and even fewer identifications are made from that four percent group. (*Id.* 709-14.) On cross-examination, he admitted that there appeared to be swirls, or possible fingerprints, on the side of the gun. (*Id.* 718-19, 721.)

13

embraces a "wide range of professionally competent assistance," and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the reasonableness of trial counsel's actions under all circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Id.* (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005)). In assessing performance, a court must apply a "heavy measure of deference to counsel's judgments." *Greiner*, 417 F.3d at 319 (quoting *Strickland*, 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* (citing *Strickland*, 466 U.S. at 690-91). Moreover, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.*

The second prong focuses on prejudice to the petitioner. The petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, "reasonable probability" means that the errors were of a magnitude such that it "undermines confidence in the outcome." *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "[T]he question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695).

The petitioner's claim fails to satisfy the first element because an examination of the trial minutes reflects that, at all times, defense counsel was a zealous advocate on petitioner's behalf and consistently argued that there were weaknesses in the State's case against petitioner. Moreover, although petitioner faults counsel for not seeking a court order that required a fingerprint analysis of the gun allegedly used by petitioner, that tactical decision did not violate the first prong of *Strickland*. That is, it was not unreasonable for counsel to decide that, rather than ask for a fingerprint test of the gun, his client was in a better position to argue that the failure to fingerprint the gun presented a reasonable doubt precluding petitioner's conviction. Counsel vigorously pursued this strategy by questioning the police about the failure to perform a fingerprint analysis, and then argued in his summation that such failure constituted reasonable doubt. (Tr. 833-35.) There is absolutely no basis to conclude that counsel's performance and strategic decisions during the course of the trial were unreasonable under *Strickland*. In any event, petitioner has also failed to satisfy the second prong of *Strickland* because, even if counsel had performed in the manner petitioner now asserts would have been preferable, there is no basis for this Court to conclude that the result of the trial would have been different in light of the overwhelming proof against petitioner. Accordingly, petitioner's ineffective assistance of counsel claim fails on the merits.

3. Prosecutor's Remark During Summation

Petitioner claims that the prosecutor's remark during summation, wherein she referenced an alleged inculpatory statement made by petitioner to a detective, and which was not part of the evidentiary record, was unduly prejudicial and deprived petitioner of a fair trial. This claim was presented to the Appellate Division and, though the Court found the remark improper, it concluded that the remark was harmless:

> The prosecutor's reference in summation to alleged statements made by the defendant that were not introduced into evidence, while improper, was harmless in light of the overwhelming evidence of guilt.

*Thompson*, 769 N.Y.S.2d at 754. As set forth below, this Court concurs with the Appellate Division and finds that the prosecutor's reference to the statements not in evidence did not deprive petitioner of his constitutional right to a fair trial and, thus, was not sufficiently egregious to warrant habeas relief.

a. The Prosecutor's Remark

The Court has carefully analyzed the context of prosecutor's remark. First, the Court examined the trial testimony regarding petitioner's statements to the police. Specifically, on his direct examination, petitioner testified that he was by himself when Ramsamojh and Sukhram attempted to buy marijuana from him and that, after they handed him ten dollars for the purchase, he ran away with the money instead of getting the marijuana. (Tr. 739-44.) On cross-examination, the prosecutor attempted to impeach the petitioner by asking him several questions concerning an oral statement that petitioner made to Detective Santangelo after his arrest, which was inconsistent with petitioner's trial testimony. (*Id.* 763-67.) In response to the prosecutor's questions, petitioner admitted that he had waived his *Miranda* rights and told Detective Santangelo that the incident was about a ten-dollar drug deal, that the complainants had handed him money, and that he took the money and walked away. (*Id.*) However, petitioner denied that he told the detective that, on the day of robbery, (1) he had left his house with only twenty-five cents and needed money, (2) he ran into a male named "Ra" on Jamaica Avenue and had a conversation with him about obtaining marijuana, and (3) he had purchased marijuana from Ra on 160th Street and Hillside Avenue, and then smoked it. (*Id.* 765-66.)

During closing arguments, petitioner's trial counsel attacked the credibility of the complainants and argued that they were not credible because Sukhram had admitted that he used to buy marijuana and Ramsamojh had been arrested for stealing a car and possessing marijuana. (*Id.* 819-20, 824-26.) Moreover, defense counsel attacked the credibility of the police officers by, among other things, suggesting that errors in the police reports indicated that certain police witnesses had tailored their testimony in an effort to strengthen the prosecution's case. (*Id.* 828-31, 836.) In addition, defense counsel argued that the prosecution's failure to call Detective Santangelo as a witness to testify regarding petitioner's oral statement after arrest was an indication that the oral statement was never made. (*Id.* 821.)

In response to defense counsel's arguments that the police had tailored their testimony and fabricated portions of an oral statement, the prosecutor argued during

15

summation that, if, as defense counsel had suggested, the police had fabricated an oral statement regarding petitioner being with Ra on 160th Street and Hillside Avenue, they would have made the statement more incriminating. (*Id.* 853-54.)

There is no question that the remark was improper because the remark referenced an oral statement by the petitioner – regarding his interactions with Ra – that petitioner had denied and there was no evidence in the record establishing that petitioner had made the statement about Ra to Detective Santangelo (because Santangelo did not testify). However, as set forth below, the Court does not believe that this isolated improper remark warrants habeas relief.

b. Analysis

"A criminal conviction 'is not likely to be overturned on the basis of the prosecutor's comments standing alone' in an otherwise fair trial." *Gonzales v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)). "Remarks of the prosecutor in summation do not amount to a denial of due process unless they constitute 'egregious misconduct.'" *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999) (quoting *Donnelly v DeChristoforo*, 416 U.S. 637, 647 (1974)). For such comments to suffice to establish a claim of constitutional error, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). As "not every trial error or infirmity which might call for the application of supervisory powers correspondingly constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice,'" (*Donnelly*, 416 U.S. at 642 (quoting *Lisenba v. California*, 314 U.S. 219, 236 (1941)), the Court must review such comments by a prosecutor narrowly to determine whether they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 642).

To overcome this burden, petitioner must show that he "suffered actual prejudice because the prosecutor's comments during [testimony and/or] summation had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994) (quoting *Darden*, 477 U.S. at 181). Such prejudice must be shown by "(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent the prejudicial conduct." *Id.*; *accord United States v. Thomas*, 377 F.3d 232, 245 (2d Cir. 2004).

In the instant case, with respect to the severity of the error, the Court does not find the improper remark to be egregious. As noted above, the prosecutor's reference was an attempt to respond to defense counsel's arguments in summation that the jury should infer that petitioner did not make certain oral statements. Thus, although it was an improper comment, the oral statement had already been the subject of questioning during petitioner's cross-examination, during which he was able to testify as to his version of events, and it had also been addressed in defense counsel's summation. In *Donnelly*, the Supreme Court found that a prosecutor's remark, while unambiguously improper, was merely trial error, and that the "distinction between ordinary trial error of the prosecutor and that sort of egregious misconduct [that] amount to a denial of constitutional due

process" must be maintained.[9] *Donnelly*, 416 U.S. at 647-48. Here, for the reasons stated above, the Court finds that the statement in the prosecutor's summation does not fall into the category of severe or egregious misconduct.[10]

As to the second prong of the prejudice analysis, any potential prejudice from the prosecutor's comment during the summation was cured by jury instructions which reminded jurors that the arguments and remarks of counsel are not evidence. In particular, the Court instructed the jury, among other things, (1) that no inference could be drawn from the simple asking of any question and only a question coupled with an answer can be considered evidence (Tr. 339), and (2) that the opening and closing arguments of counsel could not be considered evidence (*Id.* 336). Similarly, in *Gonzales*, where the prosecutor remarked on community safety, the Second Circuit held that the remark was inappropriate, but concluded that the error had been remedied by the trial court's instructions to the jury. *Gonzales*, 934 F.2d at 424. As in *Gonzales*, it is clear that, in this case, the statement made by the prosecutor was not severe enough to equate with the "egregious misconduct" referred to in *Donnelly*, and any potential threat to petitioner's constitutional rights was effectively neutralized by the trial judge instructions. *See also United States v. Rivera*, 971 F.2d 876, 885 (2d Cir. 1992) (finding that the trial court's instructions cured any prejudice arising from prosecutorial error).

Finally, the evidence presented to the jury in this case was so overwhelming that conviction was certain absent the prejudicial conduct. *See, e.g., Strouse v. Leonardo*, 928 F.2d 548, 557 (2d Cir. 1991) (finding no violation where the "cumulative effect of prosecutor's alleged misconduct was not so severe as to amount to the denial of a fair trial [and] absent the alleged misconduct, . . . overwhelming evidence" existed against petitioner); *Bradley v. Meachum*, 918 F.2d 338, 343 (2d Cir. 1990) ("[C]lear evidence of guilt demonstrates that [petitioner] was not prejudiced."); *see also Michaels v. Portuando*, No. 99-CV-3195(JG) 2002 WL 1732813 at *7-*8 (E.D.N.Y. Jul. 23, 2002) (finding that the testimony of multiple eyewitness provided sufficient evidence such that remarks by the prosecutors did not alter the probability of conviction). The petitioner's conviction was supported by, among other things, the following: (1) the eyewitness testimony of two victims in which they stated that petitioner, accompanied by another man, had taken their property by gunpoint; (2) police testimony that one victim's pager was found on petitioner when he was apprehended in the closet of an apartment; (3) police testimony that, in an alley where police saw the petitioner as they chased him following the robbery, they recovered the remainder of the victims' property in a shirt that petitioner had worn earlier that day; and (4) police testimony

---

[9] The challenged remark in that case was "'I honestly and sincerely believe that there is no doubt in this case, none, whatsoever.'" *Donnelly*, 416 U.S. at 640 n.6.

[10] Although petitioner refers to the prosecutor as an "unsworn witness," he is mistaken. In the instant case, the prosecutor did not indicate that she was present when the oral statement was made, and did not state her personal opinion or belief as to whether or not it was made. In any event, as discussed *infra*, regardless of how the remark is characterized, it was not sufficiently egregious to warrant habeas relief.

that a gun was also recovered in the alley.[11] Thus, the proof of guilt was so abundant as to eliminate any potential prejudice the petitioner may have suffered due to the prosecutor's remark in summation. Accordingly, this ground for seeking habeas relief is denied.

In sum, after examining the merits of all of petitioner's claims, the Court concludes that the state court's decisions on his claims were not contrary to, nor an unreasonable application of, clearly-established Supreme Court precedent and, thus, no grounds for habeas relief exist under 28 U.S.C. § 2254.

### III. CONCLUSION

For the foregoing reasons, the instant habeas petition is DENIED. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: July 6, 2007
Central Islip, New York

\* \* \*

Petitioner appears *pro se*. The attorney for respondent is Richard A. Brown, Esq., Queens County District Attorney, by John M. Castellano, Esq., and Traci R. Wilkerson, Esq., Queens County District Attorney's Office, 125-01 Queens Boulevard, Kew Gardens, New York 11415.

---

[11] Moreover, the only portion of the oral statement regarding "Ra" – petitioner's purported accomplice – that had not been the subject of any other testimony at trial was the name "Ra." In other words, both Ramsamojh and Sukhram testified that petitioner and another man approached them at 160th Street and Hillside Avenue and that petitioner had taken their property at gunpoint with the other man standing there, and that the two ran away together thereafter. Therefore, there was direct evidence from eyewitnesses that petitioner had been at that location with another man and, thus, the reference to an oral statement where petitioner met a man named "Ra" was inconsequential in light of the other proof.